# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2026

Lyle W. Cayce
Clerk

————————

No. 25-40170

————————

Marin Lopez; Pedro Bermea; Trinidad Lopez; Arturo Menchaca; Eladio Bermudez; Javier Garcia; Robert Guerra; Luis Carlos Gonzalez; Epigmenio "TJ" Gonzalez; Juan Garcia, Jr.; Julio Eguia; Aaron Garcia,

*Plaintiffs—Appellees*,

*versus*

Eduardo Ramirez; Noe Castillo; Basilio D. Villareal, Jr.; Roel Gonzalez,

*Defendants—Appellants.*

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CV-33

———————————————————————

ON PETITION FOR REHEARING EN BANC

Before Willett, Wilson, and Douglas, *Circuit Judges*.

Per Curiam:

Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R.40 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the

No. 25-40170

request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (FED. R. APP. P.40 and 5TH CIR. R.40).

In the en banc poll, seven judges voted in favor of rehearing (JUDGES JONES, SMITH, RICHMAN, HO, DUNCAN, ENGELHARDT, and OLDHAM), and ten voted against rehearing (CHIEF JUDGE ELROD, and JUDGES STEWART, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, WILLETT, WILSON, DOUGLAS, and RAMIREZ).

No. 25-40170

JERRY E. SMITH, *Circuit Judge*, joined by DUNCAN, *Circuit Judge*, dissenting from the denial of rehearing en banc:

Welcome to Groundhog Day in July.[1]

These defendants are caught in a time loop as seemingly endless as the one in the movie. Because the district court, the Fifth Circuit panel, and now the en banc court refuse to fix it, I respectfully dissent from the denial of rehearing en banc.

This distinguished panel has made an honest effort to compensate for the district court's mishandling. Unfortunately, the panel's solution—with the best of intentions—only makes it worse.

The defendants assert absolute legislative immunity and qualified immunity (jointly, "QI") from alleged First Amendment violations.[2] The law is settled that a defendant can invoke the collateral order doctrine to take an immediate interlocutory appeal from the denial of QI. As distinguished from ultimate immunity from liability, that is an immunity from further proceedings until QI is decided by the court of appeals.

The revised panel opinion—like the panel's initial opinion—has many flaws. Perhaps the most prominent of these is the unanimous panel's absolute refusal to articulate or even acknowledge the standard that governs the timing of an interlocutory QI appeal. That well-established standard was

---

[1] "*Groundhog Day* [starring Bill Murray] is a 1993 American fantasy romantic comedy film [that] tells the story of a cynical television weatherman covering the annual Groundhog Day event in Punxsutawney, Pennsylvania, who becomes trapped in a time loop, forcing him to relive February 2 repeatedly . . . . The term *Groundhog Day* mean[s] a monotonous, unpleasant, and repetitive situation." WIKIPEDIA, *Groundhog Day (film)*, https://en.wikipedia.org/wiki/Groundhog_Day_(film) (last accessed July 6, 2026).

[2] I express no view on the underlying substantive issues. The question now is whether there is appellate jurisdiction under the collateral order doctrine, not whether the defendants will ultimately prevail on their QI defense.

recently reiterated—and in fact was repeated eight times—in *Wertenbroch v. Hardeman*, 178 F.4th 186 (5th Cir. 2026).[3]

Relying largely on *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), the *Wertenbroch* panel eight times reminds the reader that "[b]ecause immunity presents 'threshold questions,' it must be 'resolved as early in the proceedings as possible.'" *Wertenbroch*, 178 F.4th at 190 (citation modified). And again: "Because [QI] is an immunity from suit, . . . we had jurisdiction because the district court refused to rule on [QI] at the earliest possible stage of litigation." *Id.* at 191 (citation modified). And again: "Whatever the circumstance, the district court must rule on [QI] at the earliest possible stage." *Id.* at 192 (citation modified). And again: *Carswell* dealt with "an express refusal to rule on [QI] early in stages of litigation." *Id.* And again: "[W]hen the motion-to-dismiss stage is the 'earliest possible stage in litigation' at which [QI] could be adjudicated, a district court is *required* to rule on the motion." *Id.* (citation modified). And again: "[B]ased on the earliest-possible-litigation principle in *Carswell*, [the QI defendant] was entitled to a ruling on his defense at this stage." *Id.* And again: "We therefore hold that when a district court allows litigation to proceed without adjudicating a [QI] defense at the earliest possible stage of litigation, the resulting order is immediately appealable, even if the district court does not expressly address [QI] in its order." *Id.* And finally: "Because the district

---

[3] *Wertenbroch* was decided seven days after the *Lopez* panel issued its substitute opinion. Being published, *Wertenbroch* is binding circuit law. But there's no need to decide the potentially murky question, under this court's rule of orderliness, of whether a panel that issues an unpublished opinion (*Lopez*) is bound by a subsequent published opinion announced before the mandate has issued for the unpublished opinion. *Wertenbroch* only articulated the law that had long existed per *Carswell* and other authorities. Moreover, *Wertenbroch* was brought to the panel's attention via a petition for rehearing en banc, so the panel easily could have acknowledged the correct standard by amendment. And *Wertenbroch* was well known to the active judges by the time they voted to deny rehearing en banc.

court did not address [QI] at the earliest possible stage in the litigation, we VACATE the district court's order and REMAND." *Id.* at 193.

The underlying facts of this case—*Lopez v. Ramirez*—occurred in 2018. Plaintiffs sued in February 2020. Defendants moved to dismiss a month later. This matter is now buried in a third appeal, following, *inter alia*, a third amended complaint, four motions to dismiss, and three remands. Still no ruling on QI. And *à la Groundhog Day*, there is no end in sight.

Let's focus on the order currently being appealed. After the second remand, the defendants again moved to dismiss. A year after the remand, the district court entered its March 31, 2025, "MEDIATION ORDER." The defendants immediately appealed, whereupon this Fifth Circuit panel has ruled that it has no appellate jurisdiction.[4]

Under the collateral order doctrine, a QI defendant can take an immediate appeal. The most common way is when the district judge explicitly denies the QI motion to dismiss at the Rule 12(b) or summary judgment stage. The less common way is where the district judge has failed or refused to rule on the motion to dismiss; that's deemed a denial.

The March 31 order either denies the motion or refuses to rule on it, so these defendants can appeal under either reading of the order.

First, the order states that "the Court on its own motion refers this case . . . for mediation" and emphasizes that "[m]ediation is a mandatory but nonbinding settlement conference." Second, the order states that "[a]ll pending motions are denied without prejudice to refiling . . . [if] . . . mediation was unsuccessful." So the judge either (1) refused to rule, awaiting

---

[4] In their initial brief on appeal, the plaintiffs-appellees had agreed with the defendants-appellants that "to the extent Appellants present a legal challenge to the denial of [QI], § 1291 permits immediate review." Nonetheless, the panel raised the question of appellate jurisdiction *sua sponte*.

"mandatory" mediation, or (2) actually ruled by denying the QI motion to dismiss.

No one can reasonably doubt that the district judge failed to rule at the earliest stage of the litigation, which, here, was at the motion-to-dismiss stage.[5] Now—years later—is hardly the "earliest stage." But the panel seems implicitly to advance the notion that mediation is not a "stage" of litigation, so even after any mediation, the litigation mystically would still be at the earliest stage. That is both fanciful and unrealistic.

And then there's the question whether appellate jurisdiction ever existed, even for a fleeting moment. To answer that, we must examine the sequence of events in the district court and the Fifth Circuit.

As stated, the March 31, 2025, order either "denied" all motions or declined to rule awaiting mediation. The appeal was noticed April 4. On April 8, the parties appeared by video to discuss available mediation dates in April and May. On April 10, a settlement conference was set for April 26. On May 5, the mediation conference was reset for May 12. On May 6, plaintiffs' lawyer advised the court that settlement was unlikely. On May 9, the May 12 settlement conference was terminated. On June 23, a status conference with the district judge was set for July 22. On June 25, the magistrate judge entered an order that the parties "are not interested in participating in a mediation at this time." In the meantime, the record had been certified to the Fifth Circuit, the case had been assigned to (and then removed from) the Fifth Circuit settlement program, and (on May 5) the Fifth Circuit had issued the briefing notice.

The panel takes the inventive position that appellate jurisdiction never existed because, viewed *post hoc*, there was never a productive settlement

---

[5] The panel admits that the district judge "deferred a ruling."

conference.  But that cannot be.

There was surely appellate jurisdiction on, say, April 10 and/or May 5, as of which dates the district judge either had denied QI or had forced the defendants to wait for a ruling pending the scheduled mediation.  Although the panel does not identify whether there was jurisdiction as of either of those dates, the panel implies that it doesn't matter, because, once it became certain that the parties weren't going to settle, any established appellate jurisdiction somehow retroactively dissolved into thin air, *nunc pro tunc*.  In the panel's words, the March 31 "order is, in substance, a case-management deferral pending a discrete, nonbinding event that Defendants emphasize never occurred, not a conclusive determination of anything."

By this notion, the parties meandered in and out of appellate jurisdiction based on a given day-to-day's estimate of the likelihood of productive bargaining.  But that's not the way jurisdiction works.  The parties are entitled to know, from the face of a QI order, whether there is jurisdiction to take a collateral-order appeal.  The panel's inventive approach only clouds what should be a matter of certainty.

Mediation may be short or lengthy.  Either way, it adds time and expense, in contravention of the principle that a QI defendant is entitled to an "immediate" appeal.  The panel flatly errs in claiming, to the contrary, that the order of "mandatory" mediation "neither rejected the immunity defense nor imposed the litigation burdens immunity exists to prevent."

Worse still, this panel has drawn a handy roadmap for district judges who are not fond of QI to delay—seemingly indefinitely—the ability of QI defendants to take interlocutory appeals.  Any district judge can, in effect, force a mediation settlement offer from a QI defendant as a condition, ultimately, of being able to appeal once mediation has concluded.  This panel casts no shadow over such potential perfidy and, in fact, can be understood

as giving license to district judges to require mediation before having to rule on QI.

But it gets worse. Given the panel's refusal even to acknowledge the "earliest stage" requirement, and the en banc court's failure to correct that grave error, there will be yet another remand. And the losing side will file yet another appeal. And yet another panel of this court will be tasked with opining on the legal questions regarding QI. Then, depending on that result, likely years down the road, there could be trial, followed by another appeal.

The en banc court had the opportunity to put this matter partly out of its misery by at least admitting that the Fifth Circuit has appellate jurisdiction, then returning the case to the panel to exercise that jurisdiction by ruling on QI. That lost opportunity is, at the very least, unfortunate.

The bad news is that this conscientious panel errs in multiple ways. First, it declines to state the governing test. Second, it pretends that an order stating that all motions are denied isn't a denial at all. Third, it posits that an order delaying a ruling—for an indefinite period—isn't really a delay at all.

The good news—if we can call it that—is that the panel opinion is unpublished, meaning that it isn't binding Fifth Circuit law. That may only confuse future litigants, who may not know to what extent they must defer to the panel's unanimous ruling.[6] The en banc court could easily have granted rehearing to repair any uncertainty.

* * * * *

Movie buffs dispute how many years the main character in *Groundhog Day* was caught in the time loop. The lowest estimate seems to be about 8½

---

[6] The revised panel opinion joins an equally errant unpublished opinion on which it relies, *De Leon v. Munoz*, No. 24-40215, 2025 WL 957500 (5th Cir. Mar. 31, 2025) (per curiam) (unpublished). As a matter of meaningless coincidence, *De Leon* was decided the same day as the district court order *à quo*.

No. 25-40170

years.[7]  At the current rate of derailment and delay, the instant litigation (*Lopez v. Ramirez*) isn't far behind.

I respectfully dissent from the refusal to grant rehearing en banc.

---

[7] *How Many Days Bill Murray Spent Trapped in "Groundhog Day,"* https://movieweb.com/how-many-days-bill-murray/trapped-groundhog-day/ (last accessed July 6, 2026).

JAMES C. HO, *Circuit Judge*, dissenting from the denial of rehearing en banc:

I'm grateful to Judge Smith for flagging this case for our attention, and share his dismay that the court is denying rehearing en banc. The mediation order should have been sufficient to establish appellate jurisdiction over this interlocutory appeal from the denial of qualified immunity.

Qualified immunity presents "threshold questions" that "must be resolved as early in the proceedings as possible." *Wertenbroch v. Hardeman*, 178 F.4th 186, 190 (5th Cir. 2026) (quoting *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231–33 (1991))). The district court failed to do so here, so we should have intervened.

The panel held that we lack appellate jurisdiction. It treated the mediation order as a mere "case-management deferral pending a discrete, nonbinding event," and "not a conclusive determination of anything."

But mediation is far more than that. It's a method of alternative dispute resolution. As such, mediation is (by definition) an "alternative" to trial. *See, e.g.*, *BPX Prod. Co. v. Certain Underwriters at Lloyd's London*, 2025 WL 2952911, *3 (5th Cir.) ("Black's Law Dictionary defines 'alternative dispute resolution' as '[a]ny procedure for settling a dispute by means other than litigation, as by arbitration or mediation.'") (quoting *Alternative Dispute Resolution*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

Moreover, this is not just a mistake of law—it's a mistake that could cause mischief. To be sure, there are times when mediation can be useful and efficient. But it can also be misused. In particular, mediation can be deployed to delay finality in the district court, as a stratagem to avoid appellate review by pressuring the parties into settling the case. Indeed, this is not the first time that Judge Smith has rightly raised such concerns about district court misuse of mediation. *See, e.g.*, *United States ex rel. Harman v. Trinity Indus.*

No. 25-40170

(5th Cir.) (No. 14-40995), Oral Arg. at 2:30–4:05.  I agree.  *See*, *e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 376 (5th Cir. 2018) (Ho, J., concurring) (expressing concerns about efforts to evade appellate review); *see also In re Westcott*, 135 F.4th 243, 250 (5th Cir. 2025) (Ho, J., concurring).

For these reasons, I dissent from the denial of rehearing en banc.

\* \* \*

A final point:  In footnote 6 of his dissent, Judge Smith notes that the panel found support in our court's "equally errant" unpublished decision in *De Leon v. Munoz*, 2025 WL 957500 (5th Cir.).

I joined that unpublished decision.  That decision, to be clear, found appellate jurisdiction in *DeLeon*—the same result that both Judge Smith and I urge here.  That said, footnote 2 of the per curiam decision separately suggests that there was no appellate jurisdiction at an earlier stage in the case.

If footnote 2 was wrong, so be it.  It's unfortunate when errors arise in our decisions—whether in express holdings in precedential decisions, or footnote asides in unpublished per curiam rulings.  But errors happen.  Because judges are human—and humans make mistakes.  A black robe is no guarantee of gray matter.  I am happy to admit error.

As judges, we should strive to be open about our mistakes, and look for opportunities to correct them.  Any judge who claims that he or she has never made a mistake is a judge I wouldn't trust.  *See*, *e.g.*, *Planned Parenthood of Greater Texas, Inc. v. Kauffman*, 981 F.3d 347, 384 (5th Cir. 2020) (Ho, J., concurring) ("as human beings, judges sometimes make mistakes," but "it is more important to get the law right than to guard our self-esteem").

There's no shame in admitting error.  There's only shame in *not* admitting error.  *See*, *e.g.*, PROVERBS 12:1 ("[W]hoever hates correction is stupid."); PROVERBS 9:8 ("[But] rebuke the wise and they will love you.").